CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 22 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EDWARD D. PLOTZKER, | CIVIL NO. 3:08cv00027 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| ROYCE C. LAMBERTH, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on defendants' various Motions to Dismiss (docket no.s 15, 19, 21, 24, and 50), plaintiff's various Motions for Default Judgment (docket no.s 18, 29, 30, and 51), plaintiff's Motion to Set Aside Motion for Default Judgment (docket no. 40), and plaintiff's Motion to reprimand defendants (docket no. 48). The Court has determined that it can adequately resolve these motions without a hearing. For the following reasons, the defendants' motions will be granted, and the plaintiff's various motions will be denied.

## I. BACKGROUND

The plaintiff in this case is a physician who, in 1990, was denied a contract renewal for the sixth and final year of his residency in urology at the George Washington University ("GWU") Hospital. He subsequently brought a breach of contract action against GWU in the Superior Court of the District of Columbia, which was settled on September 27, 1991. *See Plotzker v. GWU*, No. 90-10973 (D.C. Sup. Ct. 1990). On that date, plaintiff and GWU executed a written settlement agreement and a stipulated confidentiality order, and the case was dismissed with prejudice.

Plaintiff again sued GWU in 1998, along with the American Board of Urology ("the ABU") and the Board of Regents of Louisiana State University, alleging that they had violated the Sherman Act and participated in a civil conspiracy to fraudulently induce him into settling his first case, and to prevent him from practicing urology. That second case, transferred to the United States District Court for the District of Columbia after it was originally filed in the United States District Court for the District of Missouri, was dismissed with prejudice by Judge Lamberth after the plaintiff failed to oppose the defendants' dispositive motions. *See Plotzker v. Amer. Bd. of Urology*, No. 99-CV-0327 (D.D.C. May 24, 1999). Judge Lamberth also denied plaintiff's repeated motions for reconsideration. Judge Lamberth's rulings were upheld by the Circuit Court of Appeals for the District of Colombia. *Plotzker v. Amer. Bd. of Urology*, No. 06-7197 (D.C.Cir.). Plaintiff then tried to file another complaint in the United States District Court for the Southern District of New York, but that case was dismissed for failing to state a claim, as well as improper venue and failing to comply with Federal Rule of Civil Procedure 8. *See Plotzker v. Lamberth, et al.*, No. 1:2007-CV-08101 (S.D.N.Y. 2007).

The plaintiff also sued his attorneys for malpractice stemming from their handling of the 1998 case. *See Plotzker v. Washburn, et al.*, No. 4:01-CV-01633 (E.D.Mo. 2001). That case was eventually dismissed in August 2005, because the plaintiff refused to accept service of the defendants' motion for summary judgment.

In the case presently before this Court, the plaintiff, proceeding *pro se*, filed a 131-page complaint, along with various lengthy exhibits, alleging RICO violations, frauds and other conspiracies by the defendants, all intended to violate the plaintiff's rights. The essence of the plaintiff's claims is that there was a broad conspiracy to prevent the plaintiff from completing his training as a urologist and from practicing medicine in that field. (See Compl. at 4.) The

defendants are GWU, the ABU (both of whom the plaintiff has sued repeatedly), Judge Lamberth, Kirkland & Ellis (the law firm who represented the ABU), and Kilpatrick Stockton LLP, a law firm for which plaintiff's own former attorney, Stewart Fried, now works.

The plaintiff now alleges that he has recently obtained new, additional evidence of these conspiracies and other wrongs done to him. However, the underlying claims in this complaint are essentially the same as the claims made in the first two cases filed by the plaintiff in federal court.

## II. MOTIONS TO DISMISS

Defendants move to dismiss the complaint on various bases, including improper venue, lack of personal jurisdiction due to defective service, res judicata, comity, failure to state a claim on which relief can be granted, and the doctrine of judicial immunity. For the following reasons, I conclude that plaintiff's claims against GWU are barred by the doctrine of res judicata, the plaintiff's claims against Judge Lamberth are barred by the doctrine of judicial immunity, the Court lacks personal jurisdiction over Kilpatrick Stockton, and the plaintiff has failed to state a claim against the ABU and Kirkland & Ellis. I also conclude that venue is improper in this district, and that plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8.

### A.    Res Judicata

Plaintiff's claims against defendant GWU in this case are barred by the doctrine of *res judicata*. In order for a claim to be precluded by the doctrine of *res judicata*, there must be (1) a judgment on the merits in a prior suit, (2) that resolved claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *Aliff v. Joy Manufacturing Co.,* 914 F.2d 39, 42 (4th Cir. 1990) (citing *Montana* v. *United States,* 440 U.S. 147 (1979)); *see also Harnett v. Billman,* 800 F.2d 1308, 1312 (4th Cir. 1986), *cert. denied,* 480 U.S. 932 (1987).

Each of these elements is satisfied here with respect to defendant GWU. First, GWU was named as a defendant in the federal case filed in Missouri and later transferred to the District of Columbia. The plaintiff's claims against GWU were eventually dismissed with prejudice on summary judgment. GWU was also a defendant in the plaintiff's original lawsuit in D.C. Superior Court, which ended in a settlement.

Second, plaintiff's claims against GWU have been adjudicated on the merits several times. The plaintiff's settlement with GWU in 1991, accompanied by a dismissal with prejudice, constitutes a judgment on the merits for purposes of *res judicata*. *See Keith* v. *Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990), *cert. denied,* 498 U.S. 900 (1990); *Harnett*, 800 F.2d at 1312. The dismissal of plaintiff's claims against GWU on summary judgment in the case filed originally in federal court in Missouri and transferred to the District of Columbia, is also a judgment on the merits. *See Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984) (noting that "for purposes of *res judicata,* a summary judgment has always been considered a final disposition on the merits.").

Third, plaintiff's claims in the instant case are based on the same causes of action as his prior suits. The claims in this case are essentially that the defendants and various others conspired to force him out of his urology training program at GWU and to prevent him from entering the field of urology. These are the same claims raised by the plaintiffs in prior suits. For example, his complaint in the 1998 case alleged that "there was a conspiracy among the defendants to keep the Plaintiff from obtaining the necessary residency time to become" a urologist. (GWU's Mem. Supp. Mot. Dis. Ex 1 at 4.) That complaint also alleged that "[t]his concerted action against the plaintiff is part of a larger pattern of action by the urology authorities to limit the number of urologists in the United States." *Id.*

While the complaint in this case is not identical to the complaints in plaintiff's prior cases, and contains some additional legal theories against GWU, it does not need to be. To determine whether the causes of action are the same, "the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Harnett,* 800 F.2d at 1313. It is irrelevant whether the plaintiff actually knew the existence of the cause of action at the time of the earlier suit; "it is the existence of the present claim, not party awareness of it, that controls." *Id. See also Meekins* v. *United Transportation Union,* 946 F.2d 1054, 1057-58 (4th Cir. 1991) (same).

Thus, the fact that plaintiff has new legal theories, such as civil RICO claims, does not prevent the application of *res judicata*. The law is well established that *res judicata* bars subsequent litigation arising from the same factual basis "even though the plaintiff in the first suit proceeded under a different legal theory." *Aliff,* 914 F.3d at 4244. *See also Chaudhary* v. *Stevens,* 2005 U.S. Dist. LEXIS 27447, *17-18 (E.D. Va. Aug. 9, 2005), *cert. denied, 127* S. Ct. 565 (2006), (same); *White* v. *Harris,* 23 F. Supp. 2d 611,616 (D. Md. 1998) (noting that the "critical inquiry is not how a legal theory is styled, but whether the theory arises out of transactions or a series of transactions the same as those resolved by the prior judgment."); *Lewin* v. *Cooke,* 95 F.Supp.2d 513 (E.D.Va. 2000), *aff'd,* 28 Fed.Appx. 186 (4th Cir. 2002), *cert. denied*, 537 U.S. 881 (2002).

Further, the fact that the plaintiff claims to have discovered new evidence will not prevent the application of res judicata, unless fraud, concealment or misrepresentation caused the plaintiff to fail to include these claims in his prior actions. *See Harnett*, 800 F.2d at 1313-314 (holding that discovery of previously concealed evidence did not prevent application of *res judicata*, because the plaintiff had adequate information from other sources to allow him to bring

the claims in prior litigation); *Bibbs. v. Mountain State University, Inc.*, 2008 WL 759077

(S.D.W.Va. Mar. 19, 2008) (rejecting argument that "new evidence" prevents application of *res judicata*, where evidence was irrelevant to plaintiff's claims).

In this case, it is difficult to distinguish from the hundreds of pages filed by the plaintiff exactly what new evidence he has discovered. It is likewise impossible to determine from the convoluted filings of the plaintiff whether any such evidence might be relevant to a legally cognizable claim. Further, although the plaintiff in this case proceeds under new legal theories, his claims all arise out of the same factual basis of his prior lawsuits. Therefore, plaintiff's claims against GWU are properly barred by res judicata.

Plaintiff's claims against the other defendants do not appear to be barred by res judicata. The ABU was a defendant in the case filed in Missouri and transferred to the District of Columbia. However, the ABU was dismissed as a defendant for lack of jurisdiction. The ABU and all of the remaining defendants were also defendants in plaintiff's last federal case, filed in the Southern District of New York. That case was dismissed for failing to comply with Rule 8, failure to state a claim, judicial immunity (as to Judge Lamberth) and improper venue. A dismissal for failure to state a claim constitutes an adjudication on the merits. *See Thomas* v. *Consolidation Coal Co.*, 380 F.2d 69, 82 (4th Cir. 1967), *cert. denied,* 389 U.S. 1004 (1967) ("if the state court's dismissal was a holding by that court that plaintiffs could in no case state in their complaint facts sufficient to constitute a cause of action, such dismissal would be a judgment on the merits and *res judicata*."); *Bostic* v. *Allstate Ins. Co.*, 866 F. Supp. 959, 959 (W.D. Va. 1994) (dismissal for failure to state a claim "is a judgment on the merits"). A dismissal for lack of jurisdiction or improper venue is not an adjudication on the merits. *See* E.H. Schopler, Annotation, *Res judicata effect of judgment dismissing action, or otherwise denying relief, for*

*lack of jurisdiction or venue*, 49 A.L.R. 2d 1036 (dismissals based on lack of jurisdiction or improper venue are not adjudications on the merits precluding later suits).

In addition, "[w]hen a dismissal is based on two determinations, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar" to subsequent litigation. *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir. 1989); *see also Rhone-Poulenc Agro, S.A. v. Monsanto Co.*, 445 F.Supp.2d 531, 539 n.10 (M.D.N.C. 2006). Judge Wood's dismissal of plaintiff's most recent federal case relied on various alternate grounds, some of which were adjudications on the merits (failure to state a claim) and some of which were not (improper venue). Similarly, the dismissal of the ABU from the Missouri case was also not on the merits, because it was based on lack of personal jurisdiction. Therefore, res judicata does not appear to bar the claims against the ABU, Kirkland & Ellis, Kilpatrick Stockton, or Judge Lamberth.

**B.    Judicial Immunity**

Plaintiff's claims against Judge Lamberth are barred by the doctrine of judicial immunity. Judicial immunity is a complete immunity from suit and not simply protection from ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). In order for judicial immunity to apply, the challenged act must be judicial in nature and must not be done in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12. The Supreme Court has noted that "'[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction.'" *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985) (quoting *Pearson v. Ray*, 386 U.S. 547, 553-54 (1967)); *see also Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Such immunity applies "however erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *Cleavinger,* 474 U.S. at 199-200 (citations omitted). Further, "judicial immunity is not overcome by allegations of bad faith or malice." *Mireles*, 502 U.S. at 11.

The factors determining whether a challenged act by a judge is a judicial one for purposes of immunity "relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The inquiry thus goes to the nature and function of the act, and not to the act itself. *Mireles*, 502 U.S. at 11-12. Similarly, a judge's immunity is not pierced by allegations that he conspired with others to do an allegedly unlawful act so long as the act is within his judicial powers. *Dennis v. Sparks*, 449 U.S. 24 (1980) (affirming dismissal of conspiracy claims against judge on basis of judicial immunity). S*ee also John v. Barron*, 897 F.2d 1387, 1391-92 (7th Cir. 1990); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) ("As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies.").

In this case, all of Judge Lamberth's actions to which the plaintiff objects were taken in the course of his official capacity as a United States District Court Judge. Plaintiff's compliant here, as well as the multiple previous actions, motions to set aside judgments, and appeals all seek to collaterally attack the decisions of Chief Judge Lamberth, and to force a different result. No allegation in the complaint can be construed to allege actions taken outside of Chief Judge Lamberth's official capacity. Further, there is no indication that Judge Lamberth lacked jurisdiction to hear plaintiff's prior case. Therefore, the plaintiff's claims against Judge Lamberth are barred by the doctrine of judicial immunity and must be dismissed.

### C. Failure to Perfect Service as to Kilpatrick Stockton

In its motion to dismiss, defendant Kilpatrick Stockton argues that this Court lacks personal jurisdiction over it because the plaintiff has failed to properly perfect service as provided in the Rules of Civil Procedure. "Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capitol Int'l v . Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

Kilpatrick Stockton is a Georgia limited liability partnership, and has a registered agent for service of process in the District of Columbia. Pursuant to the Federal Rules of Civil Procedure, corporations, partnerships and associations must be served either "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment of by law to receive service of process...." Fed. R. Civ. P. 4(h).

The plaintiff attempted to serve Kilpatrick Stockton by leaving a copy of the complaint and summons with the firm's receptionist at its Washington, D.C. office. The receptionist is clearly not an officer, managing or general agent, or an agent authorized by law to receive service of process. Further, Kilpatrick Stockton maintains that the receptionist is not an agent appointed to receive service of process. (Mem. Supp. Mot. Dis. Ex. B.) Therefore, service was not properly made under Rule 4(h)(1)(B). *See Free State Receivables, Ltd. v. Claims Processing Corp. of New Jersey*, 76 F.R.D. 85, 87 (D.Md. 1977) (dismissing case for lack of personal jurisdiction where the complaint and summons were delivered to receptionist of corporate defendant, but not to an officer or authorized agent).

In order for process to have been served under Rule 4(h)(1)(A), the process must be served in according with Rule 4(e)(1). That rule provides the following options for serving an individual:

> an individual . . . may be served by (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made or (2) . . . (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1).

The rules of the D.C. Superior Court regarding service of process are nearly identical to the requirements set forth in Fed. R. Civ. P. 4(e)(1) and 4(h). *See* D.C. Superior Court Rule 4(e)(1)(service upon individuals within the United States) and 4(h)(service upon corporations and associations). D.C. Superior Court rule 4(c) also permits service via certified or registered mail.

The plaintiff did not serve Kilpatrick Stockton by certified or registered mail, and did not serve an agent authorized by appointment or by law to receive service of process. The other options for serving an individual are not applicable here (*e.g.*, Kilpatrick Stockton has no "dwelling or usual place of abode"). Therefore, the plaintiff has failed to perfect service on Kilpatrick Stockton, and as a result, this Court lacks personal jurisdiction over it. Plaintiff's claims against Kilpatrick Stockton must therefore be dismissed. *See* Fed. R. Civ. P. 12(b)(5).

**D.      Failure to State a Claim**

Because plaintiff's claims against GWU are clearly barred by res judicata, his claims against Judge Lamberth are barred by judicial immunity, and the court lacks personal jurisdiction

over Kilpatrick Stockton, I will only address the merits of the claims made against Kirkland & Ellis and the ABU.[1]

The plaintiff brings eleven counts against Kirkland & Ellis, who previously represented the ABU in litigation against the plaintiff. The claims basically allege that the law firm was part of a conspiracy to obstruct justice, cause economic harm to the plaintiff, and to violate the plaintiff's Sixth Amendment and Due Process rights. The counts also allege that Kirkland & Ellis provided false information in various court proceedings, and conspired to conceal the economic interest in the law firm of a judge on the Circuit Court of Appeals for the D.C. Circuit. (Compl. at 9-11.) The plaintiff names the ABU in ten counts of the complaint, alleging civil violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, conspiracy to violate the plaintiff's Constitutional rights to Due Process and under the Sixth Amendment, and of fraud. Both the ABU and Kirkland & Ellis have moved to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

      1.    <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint and does not resolve contests concerning the facts, the merits of claims, or the applicability of defenses. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). A complaint will survive as long as it sets out sufficient facts for the court to infer that each element of a cause of action is present. *See Wolman v. Tose,* 467 F.2d 29, 33 (4th Cir. 1972). In considering a Rule

---

[1] It should be noted, however, that the reasons for finding that the plaintiff has failed to state a claim as to Kirkland & Ellis are equally applicable to the claims against Kilpatrick Stockton. Further, the plaintiff's claim of malpractice against Stewart Fried and Kilpatrick Stockton is barred by the statute of limitations. This count arises from Mr. Fried's representation of the plaintiff from 1999 to 2004. Mr. Fried last represented the plaintiff in April 2004, when he withdrew as plaintiff's counsel in litigation on-going in the Eastern District of Missouri. *See Plotzker v. Washburn,* No. 01 Civ. 1633 (E.D.Mo. 2002). Washington, D.C. has a three-year statute of limitations on malpractice claims. *See* D.C. St. § 12-301. The instant claim was filed in July 2008, well outside of the limitations period, and is therefore barred.

12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and must assume its factual allegations to be true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir. 1992). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974.

Because *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," courts must "construe *pro se* complaints liberally." *Baudette v. City of Hampton*, 775 F.2d 1274, 1277–1278 (4th Cir. 1985). "[T]hose litigants with meritorious claims should not be tripped up in court on technical niceties." *Id.* at 1277–78 (citation omitted). Courts need not, however, "conjure up questions never squarely presented to them. . . . Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence

fragments." *Id.* at 1278. The requirement of liberal construction does not mean that courts can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).

>    2.    Discussion

Even when the complaint is construed liberally, and the allegations are taken as true, the plaintiff fails to state a claim on which relief can be granted.

>    *a.*    *Obstruction of justice and fraud claims*

There is no private right of action for obstruction of justice or fraud upon the court. *See Griffiths v. Siemens Automotive, L.P.*, 1994 WL 645433 (4th Cir. 1994) (per curiam) ("Griffiths failed to allege, and this Court is unable to find, any basis in law for a civil cause of action for perjury or the subornation of perjury."); *Miller v. Jack*, 2007 WL 1169179, *2 (N.D.W.Va. 2007) ("Numerous courts . . . have held that perjury and obstruction of justice are criminal acts, and therefore, do not give rise to a civil cause of action."); *Salazar v. United States Postal Service*, 929 F.Supp. 966, 969 (E.D.Va. 1996) (noting dismissal of obstruction of justice claim because there is no such cause of action under Virginia civil law).

Any other fraud claims are clearly barred by the statute of limitations, which is three years in Washington, D.C., *see King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978) (fraud claim must be brought "within three years from the time the fraud is either discovered or reasonably should have been discovered"), and two years in Virginia, *see* Va. Code § 8.01-243. The plaintiff's allegations of fraud all stem from the "conspiracy" to force him out of his urology training program – events that occurred almost 20 years ago. This is well outside of either limitations period, and those claims are therefore barred by the statute of limitations.

>    *b.*    *Constitutional claims*

The counts of the complaint alleging violations of plaintiff's Constitutional rights and conspiracy to violate his Constitutional rights also fail to state a claim. It appears that these allegations are an attempt to assert a claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). A claim under *Bivens* must allege that the defendants acted under color of federal law to deprive plaintiff of a constitutional right. *Id.* As such, private parties are not generally liable under *Bivens*. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982). The plaintiff has made no allegations here that any defendant acted under color of federal law, nor is there any interpretation of the allegations in the complaint that might lead to the conclusion that the defendants were acting under color of federal law. Further, all of the remaining defendants are private parties. Therefore, the plaintiff has failed to state a claim under *Bivens*.

To the extent that plaintiff asserts claims of conspiracy to violate his constitutional rights, the claim will be construed as one under 42 U.S.C. § 1985. Those claims fail as well. To state a claim under § 1985, a plaintiff must allege:

> (1) A conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (citing *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983)). Here, plaintiff alleges that the defendants were part of a conspiracy to force him out of the urology training program at GWU, to prevent him from completing his urology training and entering the field, and to limit the number of urologists throughout the country. The plaintiff makes no allegation that the conspiracy was motivated by

racial animus or other invidious discriminatory intent. Therefore, he fails to state a claim under 42 U.S.C. § 1985.

c.    *Civil RICO claims*

The plaintiff's civil RICO claims are barred by the statute of limitations. "Private RICO suits are governed by a four-year statute of limitations, which runs from the date when the plaintiff discovered, or should have discovered, the injury." *Potomac Electric Power Co. v. Electric Motor and Supply, Inc.*, 262 F.3d 260 (4th Cir. 2001) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997)). The plaintiff alleges that the ABU violated RICO by coercing the plaintiff into settling his initial lawsuit in 1991 (Compl. ¶ 285), and by limiting the number of licensed urologists in the United States. (Compl. ¶ 87). All of plaintiff's allegations regarding the conspiracy to reduce the number of urologists in the U.S. concern actions that took place in the 1980's, and the plaintiff was well aware of the injury to him shortly thereafter, when he filed his first lawsuit (and certainly no later than when he filed his second lawsuit in 1998). *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) (holding that discovery of the injury, not of the other elements of the claim, starts the statute of limitations clock). The plaintiff further alleges that the judge and attorneys in his 1998 lawsuit, including Kirkland & Ellis, were co-conspirators in these RICO violations, essentially because they contributed to the ultimate dismissal of that case in a variety of ways. (Compl. ¶ 374 *et seq.*) However, that lawsuit was dismissed in May 1999, which is when the plaintiff should have discovered the injury to himself. This is well outside the four year period. All of the plaintiff's civil RICO claims are therefore barred by the statute of limitations.

### E.    Venue

All of the defendants in this case have objected to venue in the Western District of Virginia.  *See* Fed. R. Civ. P. 12(b)(3).  Although the plaintiff's complaint may be dismissed for the reasons stated above, it also appears that venue is improper in this district and should be dismissed on that basis, in the event that the foregoing reasons are insufficient.

In a case where jurisdiction is not based solely on diversity of citizenship,[2] a case may be brought in (1) a district where any defendant resides, if all defendants reside in the same state, or (2) the district "in which a substantial part of the events or omissions giving rise to the claim occurred," or (3) a district in which any defendant may be found, if there is no other appropriate venue.  28 U.S.C. § 1391(b).  A plaintiff need only make a prima facie showing of venue to survive a motion to dismiss.  *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  The burden to establish that venue is appropriate in the chosen district is upon the plaintiff once the defendant raises an objection.  *United Coal Co. v. Land Use Corp.* 575 F.Supp. 1148, 1158 (W.D. Va. 1983).  If venue is improper, the court must either dismiss the case, or transfer it to a proper district, if transfer is in the interests of justice.  28 U.S.C. § 1406(a).

The plaintiff in this case did not make a prima facie showing that venue is proper in this district.  The complaint does not allege that all the defendants reside in Virginia,[3] and in fact states that many of the defendants are located in Washington, D.C.  A corporation resides in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  However, the complaint makes no allegations that would

---

[2] The complaint appears to contain civil RICO claims, False Claims Act claims, and Constitutional claims, thereby giving rise to federal question jurisdiction.  28 U.S.C. § 1331.
[3] The complaint does allege that the ABU "conducted its business from Charlottesville, VA," and that GWU has operated their urology training program in Fairfax, VA.  While Charlottesville is within the Western District of Virginia, Fairfax is not.

give rise to personal jurisdiction in the Western District of Virginia for any of the defendants besides the ABU. Therefore, venue is improper under 28 U.S.C. § 1391(b)(1).

The complaint also does not allege that a substantial part of the events giving rise to the claim occurred in the Western District of Virginia. In the Fourth Circuit, a court must consider the "entire sequence of events underlying the claim" to determine whether venue is appropriate in a particular district. *Mitrano*, 377 F.3d at 405 (citation and quotation omitted). Here, all of the events described in the complaint, which involve the plaintiff's participation in a urology training program at GWU, and the subsequent litigation over that program, occurred in Washington, D.C. The plaintiff makes various allegations regarding the ABU's role in the conspiracy against him, and alleges that the ABU's office is located within the Western District of Virginia. Even if some or all of the ABU's alleged acts occurred in the Western District of Virginia, the allegations in the complaint are insufficient to show that a substantial part of the relevant events occurred within this district. Therefore, venue is improper in the Western District of Virginia under 28 U.S.C. § 1391(b)(2).

Judge Wood reached a similar conclusion in plaintiff's second federal case in the Southern District of New York, finding that:

> [T]he alleged wrongdoing that is the basis for this action occurred in Washington, D.C., where plaintiff's extensive litigation occurred. His defendants include the judges involved in that litigation who are all located in Washington, D.C.; plaintiff's lawyers and law firms as well as his adversaries' lawyers and law firms, all of which performed their services in Washington, D.C., and George Washington University, which is located in Washington, D.C. The action if it were potentially meritorious, should have been filed in the District of Columbia.

*Plotzker v. Lamberth*, No. 07-CV-8101 (S.D.N.Y.), Order of Dismissal, at 9-10 (Sept. 14, 2007) (GWU's Mem. in Supp. of Mot. to Dismiss Ex. 5).

Plaintiff himself has conceded that Washington, D.C. is the proper forum for his claims. In the order transferring the case from the Eastern District of Missouri to the District Court for the District of Columbia, the court noted that the plaintiff "believes the most appropriate forum would be the District of Columbia. . . . Moreover, plaintiff asks the Court to transfer the case to the District of Columbia." *Plotzker v. American Board of Urology, et al.*, No. 4:98cv1310-DJS (E.D.Mo. 1998).

Finally, because venue would be proper in Washington, D.C., plaintiff cannot look to 28 U.S.C. § 1391(b)(3) for venue (where any defendant may be "found"). *See, e.g., Thornberry v. Fed Bur. of Prisons*, 535 F. Supp. 2d 154,155 (D.D.C. 2008) (holding that venue was improper in the district under subsection (3) because venue was proper in a different district under subsection (2)). Therefore, venue is improper in the Western District of Virginia.

I further find that it is not in the interests of justice to transfer the case to the District Court for the District of Columbia. The plaintiff has attempted to litigate and re-litigate these claims in various fora, including the District of Columbia, several times, and has at no point shown that any of his claims might have any merit. Therefore, there is no prejudice that would result to the plaintiff by dismissing, rather than transferring, the present case. Further, the plaintiff was on notice that the District of Columbia was the proper venue for his claims. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201-202 (4th Cir. 1993) (holding that "a district court does not abuse its discretion when it denies, as not in the interest of justice, . . . to transfer a case from an improper forum because the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper."). The plaintiff's first federal case, filed in Missouri, was transferred to the District of Columbia, and plaintiff's second federal case, filed in New York, was dismissed for improper venue, as explained above. Judge Wood's opinion

clearly stated that the proper venue for plaintiff's claims would be the District of Columbia. The plaintiff should have foreseen that the Western District of Virginia would be an improper forum for his claims, and the case may be dismissed on this ground.

### F. Failure to Comply with Rule 8

Finally, the plaintiff's complaint does not comply with the requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(e)(1) requires that each averment of a pleading be "simple, concise, and direct." A pleading "does not have to set out in detail the facts on which the claim for relief is based," 2 Moore's Federal Practice ¶ 8.04[1], at 8-22 (3d ed. 2002), but must give the court and the defendant "fair notice of what that plaintiff's claim is and the grounds upon which it rests." *Swirkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court may dismiss a complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Plaintiff's complaint is over 130 pages long, and the exhibits attached to the complaint comprise hundreds of additional pages. This pleading is far from a "short and plain statement," and the convoluted and redundant narratives and legal conclusions render the complaint nearly incomprehensible. The complaint does not provide the defendants "fair notice" of the claims and facts upon which they are based. Therefore, the complaint does not comply with Rule 8, and should be dismissed.

### III. MOTIONS FOR DEFAULT JUDGMENT

The plaintiff moved for default judgment pursuant to Federal Rules of Civil Procedure 55 as to the ABU (docket no. 18), Kirkland & Ellis (docket no. 29), and Judge Lamberth (docket

no.s 30 and 51). Plaintiff has also moved to set aside his first motion for default judgment as to Judge Lamberth (docket no. 40).

Default judgment is appropriate when a defendant has failed to plead or otherwise defend the action. *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1002 (E.D.Va.1985); *see also* Fed.R.Civ.P. 55. The decision to enter default judgment lies within the sound discretion of the court, *Broglie v. Mackay-Smith*, 75 F.R.D. 739, 742 (W.D.Va.1977), but default judgment generally is disfavored, *Tazco, Inc., v. Dir., Office of Workers Comp. Programs, U.S. Department of Labor*, 895 F.2d 949, 950 (4th Cir.1990).

The ABU was served with process on June 26, 2008. The summons stated that the ABU had 20 days to answer or otherwise respond to the complaint. The ABU filed its motion to dismiss on July 22, 2008. While this motion came outside the 20-day deadline, it was only by a few days. Given the small delay in the ABU's response that occurred in this case, the lack of any apparent prejudice to the plaintiff as a result, and the ABU's meritorious defenses raised in its motion to dismiss, plaintiff's motion for default judgment as to the ABU will be denied.

Kirkland & Ellis was purportedly served with process on July 3, 2008. On August 1, 2008, Kirkland & Ellis filed its motion to dismiss. The plaintiff filed his motion for default judgment on August 8, 2008. In its motion to dismiss and its response to plaintiff's motion for default judgment, Kirkland & Ellis maintains that it was never properly served with process. The Return of Service filed by the plaintiff states that "Steven Kins, mail clerk" was served with the summons and complaint. Kirkland & Ellis maintain that they never received the summons and complaint from the defendant, and that their mail clerk is not an authorized agent for receipt of service. *See* Fed. R. Civ. P. 4(h)(1)(B) (service must be made upon a partnership by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or

any other agent authorized by appointment or by law to receive service of process."). However, Kirkland & Ellis subsequently learned of the lawsuit, obtained the pleadings electronically, and promptly responded to the complaint with a motion to dismiss, in which they waive service. Under these facts, Kirkland & Ellis is not in default, and plaintiff's motion for default judgment will be denied.

Judge Lamberth was purportedly served with process on July 10, 2008. On September 17, 2008, Judge Lamberth filed a motion to dismiss. In that motion, Judge Lamberth maintains that he was not properly served with process, because the plaintiff failed to serve the Attorney General of the United States pursuant to Federal Rule of Civil Procedure 4(i)(B). This requirement is more than a formality; such service allows "the appropriate official to determine . . . whether the defense properly may and will be undertaken by government counsel." *Light v. Wolf*, 816 F.2d 746, 750 (D.C.Cir. 1987). There is no evidence in the record before the Court that the plaintiff has, in fact, perfected service upon Judge Lamberth. Therefore, he is not in default, and plaintiff's motion for default judgment will be denied.

## IV. MOTION TO REPRIMAND DEFENDANTS

Plaintiff moved to reprimand the defendants and their counsel for failing to serve their corporate disclosure statements on the plaintiff (docket no. 48). Federal Rule of Civil Procedure 7.1 requires that non-governmental corporate parties file disclosure statements. The purpose of the disclosure statements required by Rule 7.1 is to assist the court in making decisions about possible disqualification. *See* Fed. R. Civ. P. Rule 7.1, Notes of Advisory Committee on 2002 Amendments. "The disclosure requirements are calculated to identify circumstances that are likely to call for disqualification of a judge 'on the basis of financial information that a judge may not know or recollect.'" *Smith v. Argent Mortgage Co.*, 2006 U.S. Dist. LEXIS 12455, at *2

(D. Colo. 2006) (citing and quoting Advisory Committee Notes). Corporate disclosure statements are required to contain limited information, and are not meant to be used as discovery tools. *See* Fed. R. Civ. P. 7.1(a)(1).

Because corporate disclosure forms are intended to be used by judges in determining whether disqualification is necessary, they are not required to be served on other parties. Rule 5(a) lists the documents that must be served on other parties. Those documents include: orders, pleadings, discovery papers, written motions, written notices, appearances, demands, offers of judgment or "any similar paper." Fed. R. Civ. P. 5(a). Neither the corporate disclosure form itself, nor this Court's standing order on Corporate Disclosures dated May 15, 2000 require service of the statement on any other parties.

Even if the defendants were required to serve the corporate disclosure statements on the plaintiff, the plaintiff has not shown that either a reprimand or sanctions are appropriate here, given the defendants' meritorious defenses to this action raised in their motions to dismiss. Accordingly, the plaintiff's motion to reprimand the defendants will be denied.

## V. MOTIONS TO SUBSTITUTE AND JOIN PARTIES

In a cover letter to an affidavit filed with the Court (docket no. 59), the plaintiff moves the Court to substitute Johns Hopkins University as a defendant, in place of one of the John Does named in the complaint. The affidavit contains only a few vague and conclusory allegations that Dr. Patrick Walsh, who was the head of the urology department at Johns Hopkins, played some role in the events surrounding the plaintiff's urology training at GWU. (Aff. ¶ 105 *et seq.*) Because any claims that the plaintiff may have against Johns Hopkins are time barred and likely not cognizable, this motion will be denied. *See Barnes v. Prince George's County, MD*, 214 F.R.D. 379, 382 (D.Md. 2003) (motion to substitute party denied where claims were barred by

statute of limitations); *Fulks v. Metts*, 2007 WL 2122140 (D.S.C. 2007) (same). Further, the plaintiff is outside the 120-day period in which he must serve such defendants. *Id.*; *see also* Fed. R. Civ. P. 4(m).

Plaintiff also filed a letter (docket no. 62) with a summons attached. The summons named Hitchcock & Cumming, LLP as the defendant. The plaintiff's letter essentially describes a proceeding against him in Superior Court for the District of Columbia by his former attorneys of the firm Baise & Miller. According to the letter, the law firm obtained a judgment against the plaintiff, and is now seeking to enforce that judgment in New York, where the plaintiff resides. Hitchcock & Cumming, LLP is the firm retained to enforce the judgment. The plaintiff alleges that all of these proceedings are part of the RICO conspiracy against him. The Court will construe plaintiff's letter as a motion to join a defendant under Rule 20. Fed. R. Civ. P. 20(a)(2).

Rule 20 allows joinder of defendants when the claims against them arise out of the same transaction or occurrence, and the claims present common questions of fact or law. Fed. R. Civ. P. 20(a)(2)(A)-(B). District courts have broad discretion to grant or deny motions for permissive joinder under Rule 20. *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). The rule should be construed "in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* (quoting *Hinson v. Norwest Financial S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001)). "[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." *Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1652 (3d ed.2001)).

Because the plaintiff's claims against Hitchcock & Cumming appear to be unrelated to

the rest of his claims (despite his allegation that they are all part of one RICO conspiracy), and because the plaintiff appears to attempt to attack the validity of the judgment of another court in this action, his motion for joinder of Hitchcock & Cumming will be denied.

## VI. OBJECTIONS TO PRE-TRIAL ORDER

The defendants submitted objections to this Court's pretrial order, requesting a stay of discovery until the instant dispositive motions were resolved (docket no. 61). Because the defendants' motions to dismiss will be granted, and the action dismissed in its entirety, defendants' objections to the pre-trial order will be dismissed as moot.

## VII. WARNING OF PRE-FILING INJUNCTION

After a thorough review of the plaintiff's numerous and lengthy filings in this case, this Court finds that plaintiff's complaint and other filings in this case are frivolous, repetitive and without merit. Accordingly, the plaintiff is hereby warned that if he submits any further frivolous filings to this Court, the Court will impose a pre-filing review system. *See Cromer v. Kraft Foods of North America, Inc.*, 390 F.3d 812, 818 (4th Cir. 2004). If such a system is placed in effect, pleadings presented to the Court that are not made in good faith and do not contain substance will be summarily dismissed as frivolous. *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984). Thereafter, if such filings persist, the pre-filing system may be modified to include an injunction from filings made without prior permission of the Court, and plaintiff may be subjected to the imposition of monetary sanctions. See 28 U.S.C. § 1651(a); Fed. R. Civ. P. 11(b) and (c); *Vestal v. Clinton*, 106 F.3d 553 (4th Cir. 1997); *Foley v. Fix*, 106 F.3d 556 (4th Cir. 1997) (per curiam).

The plaintiff has already been warned against filing frivolous and unsupported pleadings after filing his third motion for reconsideration of the judgment of the District Court for the

District of Columbia. In his opinion denying that motion, Judge Lamberth wrote:

> . . . [T]he Court agrees that plaintiff must be advised to familiarize himself with Federal Rule of Civil Procedure 11, and refrain from filing further frivolous and scandalous unsupported accusations lest the plaintiff be subject to paying defendants' attorneys fees for continuing to litigate this case. Defendants are correct when they say that enough is enough, and that plaintiff has had a full and fair opportunity to be heard on his claims. He lost. Defendants are entitled to be left alone, and not to expend additional attorneys' fees for litigation with the plaintiff.

*Plotzker v. Am. Bd. of Urology*, No. 99-327 (RCL), slip op. (D.D.C. Sept. 30, 2005).

This Court repeats Judge Lamberth's warning to the plaintiff.

## VI. CONCLUSION

For the reasons stated herein, the Court will grant defendants' motions to dismiss, and deny plaintiff's motions. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to the plaintiff.

ENTERED: This _22nd_ day of October, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE